J-A07010-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| LEWIS HALSTEAD, SR., AS ASIGNEE OF NICHOLAS GIORDANO | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : : | |
| PROGRESSIVE SPECIALTY INSURANCE COMPANY | : : : | No. 430 MDA 2025 |
| Appellant | : | |

Appeal from the Order Entered February 24, 2025
In the Court of Common Pleas of Lackawanna County
Civil Division at No(s):  2020-CV-4413

BEFORE:  BOWES, J., DUBOW, J., and NEUMAN, J.

MEMORANDUM BY BOWES, J.:                    **FILED: JULY 28, 2026**

Progressive Specialty Insurance Company ("Progressive") appeals from the order that denied its motion for summary judgment in the instant declaratory judgment action.  Progressive also filed a protective petition for permission to appeal in the event that the trial court's order was not appealable as of right.  Upon review, we reverse the order denying Progressive's motion, deny as moot the petition for permission to appeal, and remand for the entry of judgment in favor of Progressive.

In April 2019, Nicholas Giordano ("Nicholas") was driving his 2012 Ford Mustang, insured under a policy issued by Kemper Insurance ("Kemper"), when he rear-ended a vehicle being driven by Lewis Halstead, Sr. ("Plaintiff")

in which Plaintiff's wife, Rose Halstead ("Rose"), was a passenger. Rose died from the injuries she sustained in the collision.

Plaintiff, on his own behalf and as the estate representative for Rose, sued Nicholas for negligence. Nicholas sought excess coverage from Progressive, but it declined. Specifically, Progressive contended that its policy ("the Policy"), issued to Nicholas's father, Peter Giordano ("Peter"), excluded excess coverage for Nicholas's liability to Plaintiff.[1] Thereafter, Kemper tendered its policy limits and Nicholas assigned his rights under the Policy to Plaintiff, who initiated the instant declaratory judgment action in November 2020, seeking a determination that Progressive was required to provide coverage for the claim.[2]

Progressive first attempted to gain a favorable judgment through moving for judgment on the pleadings. In its motion, Progressive maintained that Policy exclusions, which we discuss in detail *infra*, relieved it of any obligation to provide excess coverage for Nicholas's liability. Plaintiff filed a response, also purporting to be a motion seeking summary judgment in Plaintiff's favor, disputing Progressive's interpretation by contending that an

---

[1] The Policy appears in multiple places within the certified record, including as Exhibit E to Progressive's August 6, 2024 motion for summary judgment.

[2] At some point, Nicholas died from causes not apparent from the record. We further note that Plaintiff's underlying negligence claim was stayed pending determination of Progressive's duty.

exception to the pertinent exclusion applied to provide coverage, or "at the very least, there is an ambiguity." N.T. Argument, 1/12/23, at 8.

On April 20, 2023, the trial court denied Progressive's motion, agreeing with Plaintiff that the exception to the invoked exclusion rendered that it inapplicable. The trial court declined to consider Plaintiff's cross-motion because he failed to comply with the local rules governing scheduling of motions for summary judgment. *See* Trial Court Memorandum and Order, 4/20/23, at 7 n.2.

Progressive filed a motion for summary judgment on August 6, 2024, stating three purported bases for its entitlement to judgment as a matter of law. First, it claimed that Nicholas was deceased at the time Plaintiff initiated this action and it was too late for Plaintiff to substitute his estate in the caption. Second, Progressive maintained that Nicholas's assignment of his rights to Plaintiff was invalid because the insurance policy required Progressive's written consent to transfer the rights and duties to another person. Third, Progressive reiterated its claim that coverage was excluded pursuant to the terms of the policy. Plaintiff filed an answer to Progressive's motion but did not file a new cross-motion seeking judgment in his favor.

The trial court disposed of Progressive's motion by memorandum and order of February 24, 2025. Therein, it cited the lack of authority offered by Progressive to support the notion that the allegedly-improper caption entitled it to judgment as a matter of law where the real party in interest was Plaintiff,

- 3 -

not Nicholas or his estate. *See* Memorandum, 2/24/25, at 4. The court rejected the challenge to Nicholas's assignment on the basis that our Supreme Court has held that provisions requiring written consent to assign rights apply only to pre-loss assignments. *Id*. at 5 (citing *Eggers v. Gulf Ins. Co.*, 903 A.2d 1219, 1227 (Pa. 2006)). Finally, the trial court referenced its April 20, 2023 memorandum and order in explaining its conclusion that the exclusion advocated by Progressive did not apply. *Id*. at 6. Accordingly, the court denied Progressive's motion for summary judgment. The court did not decide Plaintiff's yet-unaddressed motion for summary judgment or otherwise expressly rule that Plaintiff was entitled to judgment as a matter of law.

On March 25, 2025, Progressive filed both: (1) a notice of appeal from the interlocutory February 24, 2025 order; and (2) a motion pursuant to 42 Pa.C.S. § 702(b) asking the trial court to certify the February 24, 2025 order for an interlocutory appeal by permission in accordance with Pa.R.A.P. 1311.

Regarding the former, the trial court directed Progressive to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal, and it timely complied.[3] The trial court provided a Rule 1925(a) opinion suggesting that the order denying summary judgment was not appealable, but that its April

_____

[3] We remind the trial court that all Rule 1925(b) orders must indicate the addresses to which the statement may be mailed and served by hand-delivery. *See* Pa.R.A.P. 1925(b)(3)(iii).

- 4 -

20, 2023 and February 24, 2025 memoranda and orders addressed the issues raised by Progressive.

This Court issued a rule to show cause why the appeal should not be quashed since the appealed-from order appeared to neither resolve all claims as to all parties nor make a final declaration of rights in the action. In its response, Progressive asserted that the practical effect of the denial of its motion for summary judgment was indeed to resolve "the entirety of [the] issue of [Plaintiff]'s eligibility for declaratory relief." Response to Rule to Show Cause, 6/12/25, at 6. In light of the response, this Court discharged the rule, but advised the parties that the appealability of the order may be revisited by the panel assigned to resolve the merits of the appeal.

Meanwhile, the trial court did not rule upon Progressive's § 702(b) certification request within thirty days. Hence, it was deemed to be denied by operation of law on April 24, 2025. On May 23, 2025, Progressive filed a petition for permission to appeal. Ultimately, this Court ordered the petition to likewise be resolved by the assigned merits panel.

Accordingly, before we address the substantive questions presented by Progressive, we must determine whether we have jurisdiction to do so. Orders denying summary judgment are generally not appealable. ***See***, ***e.g.***, ***Good v. Frankie & Eddie's Hanover Inn, LLP***, 171 A.3d 792, 794 n.1 (Pa.Super. 2017) ("An order denying summary judgment is ordinarily a non-appealable interlocutory order." (cleaned up)). "However, an order in a declaratory

judgment action that either affirmatively or negatively declares rights, status, and other legal relations is a final order." *Id*. (citing 42 Pa.C.S. § 7532 (stating that a court's declaration of rights in a declaratory judgment action "shall have the force and effect of a final judgment or decree"). *See also* Pa.R.A.P. 311(a)(8) (providing that an appeal may be taken as of right from an order "that is made final or appealable by statute or general rule, even though the order does not dispose of all claims and of all parties").

The key considerations in determining the finality of a declaratory judgment order are: "(1) what is the effect of the lower court's decision on the scope of the litigation; and (2) what practical effect does the court's decision have on the ultimate outcome of the case." *Pennsylvania Manufacturers' Ass'n Ins. Co. v. Johnson Matthey, Inc.*, 188 A.3d 396, 399 (Pa. 2018) (cleaned up). "If the order in question merely narrows the scope of the litigation and does not resolve the entirety of the parties' eligibility for declaratory relief, then the order is interlocutory and not immediately appealable." *Id*. at 400.

Here, Plaintiff filed a one-count complaint seeking a declaration that, pursuant to the Policy, Progressive was obligated to provide coverage for Nicholas's liability. *See* Complaint, 11/12/20, at ¶ 16 & wherefore clause. Progressive's defense of the action was founded upon the three bases raised in its motion for summary judgment, all of which were rejected by the trial court. Progressive contends that, as it has no remaining basis to contest

Plaintiff's right to relief, "[t]he practical effect of the trial court's February 24, 2025 denial of Progressive's motion for summary judgment resolved the entirety of the [Plaintiff]'s eligibility for declaratory relief." Progressive's brief at 27.

We agree. The trial court determined that the language of the Policy exclusions relied upon by Progressive to deny coverage did not justify the denial. The practical effect of the court's order denying Progressive's motion for summary judgment was to declare that Plaintiff is entitled to the declaratory relief he requested. Indeed, it appears that the only reason the trial court did not enter a final judgment in favor of Plaintiff was because Plaintiff neglected to follow a local procedural rule to render his motion ripe for adjudication. Therefore, the trial court's ruling leaves no additional issues to be resolved and had the practical effect of deciding the outcome of the case rather than merely narrowing the issues.[4] *Accord Toth v. Toth*, 324 A.3d 469, 485 (Pa.Super. 2024) (*en banc*) (holding appeal as of right flowed from order deciding "critical issues at the center of this litigation and the outcome of this case" that had the practical effect of deciding with finality the right to

_____

[4] In the portion of his brief disputing the appealability of the February 24, 2025 order, Plaintiff explains why the order was neither a final order appealable pursuant to Pa.R.A.P. 341 nor a collateral interlocutory order appealable as of right under Pa.R.A.P. 313. *See* Plaintiff's brief at 9-11. He offers no analysis of the applicability of Rule 311(a)(8).

declaratory relief).  We thus have jurisdiction pursuant to Rule 311(a)(8) and § 7532 to reach the merits of Progressive's appeal.[5]

Progressive states the following questions for our resolution:

1.      Whether the trial court erred in holding [Nicholas] qualified as a "named insured" under the [P]olicy despite the designation of [Nicholas] as a "driver and resident relative," alone, on the [P]olicy?

2.      Whether the trial court erred in denying summary judgment in favor of Progressive, where the facts, when viewed in the light most favorable to [Plaintiff], are sufficient to establish that the language of the regular use exclusion was applicable and bars [Plaintiff]'s claims for coverage under Part I—Liability To Others?

Progressive's brief at 6 (cleaned up).

The following legal principles govern our consideration of Progressive's issues.  "Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be [properly] entered."[6]  ***Higgins v. Nationwide Affinity Ins. Co. of Am.***, 329 A.3d 701, 703 (Pa.Super. 2024) (cleaned up).  "Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear:  the trial court's

---

[5] As such, we deny Progressive's petition for permission to appeal as moot.

[6] Here, the trial court determined that that the material facts are not in dispute.  ***See*** Memorandum and Order, 4/20/23, at 6.  Neither party challenges that assessment, and our review of the certified record confirms that the only issue to be resolved is the legal consequence of applying the Policy to those facts.

order will be reversed only where it is established that the court committed an error of law or abused its discretion." ***Id***. (cleaned up).

Both of Progressive's questions, which we opt to address together, involve interpretation of the Policy. In this vein we observe:

> As the interpretation of an insurance contract is a question of law, our standard of review is *de novo*; thus, we need not defer to the findings of the lower tribunals. Our scope of review, to the extent necessary to resolve the legal question before us, is plenary.
>
> When the language of the insurance contract is clear and unambiguous, a court is required to give effect to that language. Additionally[, i]n interpreting the terms of an insurance contract, we examine the contract in its entirety, giving all of the provisions their proper effect. Our goal is to determine the intent of the parties as exhibited by the contract provisions. In furtherance of our goal, we must accord the contract provisions their accepted meanings, and we cannot distort the plain meaning of the language to find an ambiguity. Moreover, we will not find a particular provision ambiguous simply because the parties disagree on the proper construction; if possible, we will read the provision to avoid an ambiguity.

***Winner v. Progressive Advanced Ins. Co.***, 345 A.3d 750, 756 (Pa.Super. 2025) (cleaned up).

Mindful of these principles, we turn to the language of the Policy purchased by Peter for himself and his family. Pursuant to Part I of the contract, in exchange for payment of the premium, Progressive agreed to "pay damages for bodily injury and property damage for which an **insured person** becomes legally responsible because of an accident." Policy at 3 (emphases in original). However, this coverage would not apply to any insured person for, *inter alia*:

(11) bodily injury or property damage arising out of the ownership, maintenance or use of any vehicle owned by **you** or furnished or available for **your** regular use, other than a **covered auto** for which this coverage has been purchased; [or]

(12) bodily injury or property damage arising out of the ownership, maintenance or use of any vehicle owned by a **relative** or **rated resident** or furnished or available for the regular use of a **relative** or **rated resident**, other than a **covered auto** for which this coverage has been purchased. This exclusion does not apply to **your** maintenance or use of such vehicle[.]

Policy at 4-5 (some emphases omitted).

A "covered auto" was defined in the Policy to include vehicles listed on the declarations page.[7]  *Id*. at 1. The terms "you" and "your" referred to "a person shown as a named insured on the declarations page" and "the spouse of a named insured if residing in the same household at the time of the loss." *Id*. at 3.  The meaning of "relative" included "a person residing in the same household as you, and related to you by blood, marriage[,] or adoption[.]" *Id*. at 2 (emphases omitted).  A "rated resident" was a household resident who was not a relative, who was listed on the declarations page among the drivers and residents, and who was not designated as excluded.  *Id*.

The Policy incorporated the above terms to define "insured person" as, among other things not pertinent here, as:

_____

[7] In circumstances not present here, vehicles acquired to replace a listed vehicle and newly-purchased additional vehicles were also covered autos.

a.      **you**, a **relative**, or a **rated resident** with respect to an accident arising out of the ownership, maintenance[,] or use of an auto or a trailer; [and]

b.      any person with respect to an accident arising out of that person's use of a **covered auto** with the permission of **you**, a **relative**, or a **rated resident**[.]

*Id*. at 3.

Here, Nicholas's Mustang was not included on the Policy's declarations page. As such, it was not a covered auto. As for his status as an insured person, the relevant portion of the declarations page stated:

**Drivers and resident relatives**        Additional information

| Peter Giordano | First Named insured |
| --- | --- |
| Laura Giordano | |
| ALEXA GIORDANO | |
| JOSEPH GIORDANO | |
| NICHOLAS GIORDANO | |

Declarations Page, 2/25/19, at 2.[8]

Progressive argues that Nicholas was not listed as a named insured on the declarations page, and was thus an insured person under the Policy only as a relative of Peter. *See* Progressive's brief at 14-15. Since the loss arose from Nicholas's operation of a vehicle owned by him, a relative, that was not a covered auto, Progressive contends that he had no coverage for his liability to Plaintiff pursuant to exclusion twelve. *Id*. at 22. The exception to the twelfth exclusion for "your" use or maintenance of the non-covered, relative-

---

[8] The Declarations Page is included in the certified record, *inter alia*, as Exhibit F to Progressive's August 6, 2024 motion for summary judgment.

- 11 -

owned auto served only to indicate that coverage for the named insured, namely Peter, was not excluded. *Id*.

The trial court held, and Plaintiff maintains, that Nicholas was a named insured, *i.e.*, a "you" as that word is used in the Policy. *See* Memorandum and Order, 4/20/23, at 6-7; Plaintiff's brief at 7-9. Therefore, the exception to exclusion twelve, namely "[t]his exclusion does not apply to **your** maintenance or use of such vehicle[,]" acted to sustain coverage. *See* Plaintiff's brief at 9.

We agree with Progressive that the Policy unambiguously excluded coverage for Nicholas's liability to Plaintiff. First, as Progressive duly notes, and Plaintiff agrees, courts of this Commonwealth have long recognized that "named insured" is a technical term with a specific meaning in insurance policies. *See* Progressive's brief at 15; Plaintiff's brief at 7. However, contrary to Plaintiff's belief, the term does not indicate each "person or entity identified by name as an insured in a policy." Plaintiff's brief at 8.

Instead, a "named insured" is a person whose name is listed on the declarations page and is specifically designated as a named insured. On this point, in ***McWeeney v. Estate of Strickler***, 61 A.3d 1023 (Pa.Super. 2013), we cited with approval the following from our sister Court's decision in ***Erie Insurance Co. v. Insurance Dept***., 705 A.2d 937 (Pa.Cmwlth. 1997):

> [There is] an extensive body of secondary authority, including insurance law treatises, indicating that the phrase "named insured" is used as a technical term in the insurance industry referring only to individuals designated as "named insureds" on

the face of or in the declarations section of the policy. ***See***, ***e.g.***, Black's Law Dictionary at 1023 (6th ed. 1990) ("Named insured. In insurance, the person **specifically designated** in the policy as the one protected and, commonly, it is the person with whom the contract of insurance has been made." (emphasis added)); Barry D. Smith et al., *Property & Liability Insurance Principles* 216 (2d ed. 1994) ("The declarations page of a policy has a space labeled 'named insured(s).' Only parties whose names appear in that space (or on an attached endorsement listing 'additional named insureds' are, in fact, 'named insureds.' Often, the spouse of a named insured receives the same coverage as a named insured, even if the spouse is not named (and is not, therefore, a named insured))." (emphasis in original)); John Alan & Jean Applebaum, *Insurance Law & Practice* 51 (1979) ("Whenever the term 'named insured' is employed, it refers only to the person specifically designated upon the face of the contract."); ***see also*** 7 Am Jur. Automobile Insurance § 236 (1980); Words & Phrases, "Named Insured" (1955 & Supp.1997).

***McWeeney***, 61 A.3d at 1028–29 (quoting ***Erie Ins. Co.***, 705 A.2d at 940 (cleaned up)).

Here, Peter, who purchased the Policy and to whom the declarations page was addressed, was the only person among the "drivers and resident relatives" specifically designated as a named insured. Consequently, the terms "you" and "your" referred only to Peter and his spouse, if residing in the same home. Nicholas thus was an "insured person" as a resident relative, not as a named insured. ***Accord McWeeney***, 61 A.3d at 1029 (holding fiancé of purchaser of policy was not named insured where, although both individuals were listed by name as principal drivers on the declarations page, only the purchaser was designated as a named insured).

Additionally, to the extent that listing Peter as the "first named insured" might be read to suggest that there were additional named insureds who were

not expressly so designated, that notion quickly dissipates upon considering the Policy as a whole.  As detailed above, the Policy stated that "you" and "your" meant "a person shown as a named insured on the declarations page" and "the spouse of a named insured if residing in the same household at the time of the loss."  Policy at 3.  Meanwhile, "relative" is defined by reference to the named insured and spouse thereof as:

> a. a person residing in the same household as **you**, and related to **you** by blood, marriage[,] or adoption, and includes a ward, stepchild, or foster child;
>
> b. a minor child in the custody of:
>
> > (i) **you**; or
> >
> > (ii) a person residing in **your** household who is related to **you**; or
>
> c. **your** unmarried dependent children temporarily away from home will qualify as a relative if they intend to continue to reside in **your** household.

*Id*. at 2.  "Rated resident" is explained by reference to the defined terms for the named insured and his or her relatives as "a person residing in the same household as **you** at the time of the loss who is not a relative, but only if that person is both" listed as a driver and resident on the declarations page and is not designated as excluded.  *Id*.

While all these insured persons have coverage under the Policy in some circumstances, we reiterate that liability coverage is expressly excluded for:

> (11) bodily injury or property damage arising out of the ownership, maintenance or use of any vehicle owned by **you** or furnished or available for **your** regular use, other than a

> **covered auto** for which this coverage has been purchased;
> [or]
>
> (12) bodily injury or property damage arising out of the ownership, maintenance or use of any vehicle owned by a **relative** or **rated resident** or furnished or available for the regular use of a **relative** or **rated resident**, other than a **covered auto** for which this coverage has been purchased. This exclusion does not apply to **your** maintenance or use of such vehicle[.]

Policy at 4-5 (some emphases omitted).

We find this Policy language to unambiguously indicate that the terms "you," "relative," and "rated resident," each of which is separately defined by reference to the named insured, designate distinct, mutually-exclusive classes of insured persons. It is simply illogical to suggest that, for purposes of the exclusion twelve, a named insured is his own relative. As such, the "relative" owner of a vehicle at issue in the twelfth exclusion cannot also be the named insured implicated in the exception to that exclusion. Instead, the plain language of exclusion twelve indicates that there is no liability coverage for a loss arising from the use of a vehicle that is not listed on the declarations page and is owned by a relative of the named insured, rather than by the named insured himself, unless the loss was occasioned by the named insured's use of the relative's non-covered auto.

Finally, if we assume *arguendo* that Nicholas was a named insured, then exclusion twelve would not be implicated because the Mustang would be one owned by a named insured rather than a relative thereof. If Nicholas is deemed to be a named insured, it is exclusion eleven that would apply to

eliminate coverage for the loss, as the accident would have been one "arising out of the ownership, maintenance or use of any vehicle owned by **you** or furnished or available for **your** regular use, other than a **covered auto** for which this coverage has been purchased[.]"  Policy at 4 (some emphases omitted).

Taken as a whole, it is clear that the intent of the Policy was that, for there to be coverage for third-party liability resulting from an auto that was owned or regularly used by a named insured or relative thereof, the auto must be a covered auto listed on the declarations page.  Even if Peter in fact believed otherwise, as is suggested by Plaintiff, it is well-settled that "an insured may not complain that his or her reasonable expectations were frustrated by policy limitations which are clear and unambiguous." ***Regis Ins. Co. v. All Am. Rathskeller, Inc.***, 976 A.2d 1157, 1166 n.11 (Pa.Super. 2009) (cleaned up).

Therefore, we hold that the trial court erred in declaring that the Policy did not exclude coverage for Nicholas's liability to Plaintiff.  Accordingly, we reverse the order denying Progressive's motion and remand for the entry of judgment in favor of Progressive.

Petition for permission to appeal denied as moot.  Order reversed.  Case remanded with instructions.  Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 7/28/2026